1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  STEVEN G. WARNER, State Bar No. 239269
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5747
     Fax: (415) 703-5843
8    Email: Steven.Warner@doj.ca.gov

9  Attorneys for Respondent Warden Robert L. Ayers, Jr.
   SF2007200867
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      OAKLAND DIVISION

14

15  **JEFFREY HAMMONS,**                C07-5098 SBA

16                         Petitioner,  **ANSWER TO ORDER TO SHOW
                                         CAUSE; MEMORANDUM OF POINTS
17           v.                          AND AUTHORITIES**

18  **BEN CURRY, WARDEN,**

19                         Respondent.  Judge: The Honorable Saundra B. Armstrong

20

21                       **INTRODUCTION**

22      Jeffrey Hammons, an inmate at San Quentin State Prison, represents himself in this habeas

23  corpus action.  Hammons alleges that the Board of Parole Hearings unconstitutionally denied

24  him parole at a 2005 hearing.  Specifically, Hammons contends that the state court failed to

25  address his arguments that he is not now a threat, the Board's reliance on the commitment

26  offense violated his due process rights, the Board failed to address his current character, the

27  Board has demonstrated a systematic bias by denying parole to ninety percent of appearing

28  inmates, and the Board re-characterized the commitment offense to a higher degree.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hammons v. Curry*
                                                                    Case No. C07-5098 SBA

1    In a large portion of the petition Hammons cites psychological and counselor's reports and

2    other evidence to contravene the Board's determination the he posed a risk of danger upon

3    release. (*See, e.g.,* Amendment/Supplement to Pet. for Writ of Habeas Corpus at 14-15.)

4    Furthermore, Hammons contends that the Board ignored evidence of his rehabilitation and

5    exemplary behavior. (Amendment/Supplement to Pet. for Writ of Habeas Corpus at 2.) Thus,

6    Hammons invites this Court to re-weigh the evidence that the Board considered. Such a re-

7    weighing is not a court's role.

8    This Court issued an order to show cause on October 15, 2007. Respondent Warden Robert

9    L. Ayers, Jr., answers as follows:

10                                   **ANSWER**

11    In response to the petition for writ of habeas corpus filed on June 12, 2007 in the United

12    States District Court for the Central District of California and later transferred to this Court,

13    Respondent hereby admits, denies, and alleges the following:

14    1.    Respondent affirmatively alleges that Hammons is lawfully in the custody of the

15    California Department of Corrections and Rehabilitation following his September 22, 1983

16    conviction for second-degree murder with use of a firearm. (Ex. 1, Abstract of J., at 1; Ex. 2,

17    Report – Indeterminate Sentence.) He is currently serving an indeterminate sentence of sixteen

18    years to life (fifteen years to life for the murder and a one-year firearm enhancement). (Ex. 1 at

19    2.) Hammons does not challenge his underlying conviction in the current proceeding.

20    2.    On December 10, 1990, following a night of drinking at a San Clemente nightclub,

21    Hammons and a fellow Marine were driving around Oceanside; the men approached a prostitute

22    whom Hammons agreed to pay twenty dollars for oral sex. (Ex. 3, Probation Officer's Report, at

23    3, 7.) The prostitute, Carlos Santana, was dressed as a woman. (Ex. 4, Subsequent Parole

24    Consideration Hearing [Transcript] at 7, 11.) During the sex act, Hammons discovered that

25    Santana was a man. (*Id.* at 11.) Hammons admitted to having been enraged by the discovery that

26    Santana was a man, and that he reacted without thinking, as he was taught in the Marines. (*Id.* at

27    41, 42.) Hammons grabbed Santana by his jacket, intending to engage him in a fistfight, but

28    Santana slipped out of his jacket and ran away. (*Id.* at 11, 38.) Hammons's crime partner told

1 | police that Hammons then drove the pair to Hammons's apartment to retrieve the gun used to

2 | shoot Santana. (Ex. 3 at 4.) However, at the hearing, Hammons said that though the gun was

3 | his, he did not retrieve it from his apartment because he kept it in his car. (Ex. 4 at 31.) Santana

4 | telephoned police to report his missing jacket and report Hammons's and his crime partner's

5 | vehicle's license plate number after copying down the number while following the vehicle in a

6 | taxi cab. (Ex. 3 at 2.) Santana telephoned police a second time about fifteen minutes later, from

7 | a pay telephone in front of the motel where he lived, telling them he was watching Hammons's

8 | car. (*Id.*) Hammons pulled his car alongside the telephone where Santana was standing,

9 | instructed his crime partner to roll down the window, and then opened fire on Santana. (Ex. 4 at

10 | 11-12.) Santana died at the scene of gun shot wounds to the neck and chest. (Ex. 3 at 2.)

11 |     3.     Respondent affirmatively alleges that Hammons admitted to driving off once he shot

12 | Santana and saw him fall to the ground. (Ex. 4 at 14.) Hammons's crime partner told police that

13 | after the crime, when he asked him where he shot Santana, Hammons replied "critical mass" or

14 | "center of mass," and that he was trained to kill. (*Id.* at 37-38.) At his hearing, Hammons denied

15 | having given this answer. (*Id.* at 38.) Hammons told police that he and his crime partner ate fast

16 | food and returned to Hammons's apartment after Santana's murder. (Ex. 3 at 4.)

17 |     4.     Hammons was not arrested until after he returned from Operation Desert Storm in

18 | 1991. (Ex. 4 at 45; Ex. 3 at 12.) Respondent affirmatively alleges that Hammons did not admit

19 | to murdering Santana until he spent "a couple of years in prison." (*Id.* at 15.)

20 |     5.     Respondent affirmatively alleges that Hammons has received two Rules Violation

21 | Reports (RVRs) for mutual combat while incarcerated – one in 1997 and another in 1999. (*Id.* at

22 | 26.)

23 |     6.     Respondent affirmatively alleges that Hammons admits to not having taken an anger

24 | management class while incarcerated. (*Id.* at 25.)

25 |     7.     Respondent affirmatively alleges that Hammons admitted to having started drinking as

26 | a teenager while in high school, to having experienced blackouts, and to having been drunk on

27 | the night of the murder. (*Id.* at 20, 15.)

28 |     8.     Respondent affirmatively alleges that though Hammons told the hearing panel that he

1  hoped to parole to Kentucky where several family members live, and that he also looked into

2  California programs and would have family support there, he failed to present any support letters

3  to the Board. (*Id.* at 20-23.)

4      9.    Respondent affirmatively alleges that a representative of the San Diego County District

5  Attorney's Office appeared at Hammons's 2005 hearing to oppose parole. (*Id.* at 46-47.)

6      10.    Respondent admits that the Board denied Hammons parole on October 4, 2005.

7      11.    Respondent admits that Hammons filed a petition in San Diego County Superior

8  Court generally alleging the same claims that he alleges here. (Ex. 5, Pet. for Writ of Habeas

9  Corpus.[1/]) Respondent further admits that the San Diego County Superior Court denied

10  Hammons's petition for writ of habeas corpus on July 25, 2006. (Ex. 6, Order Denying Pet. for

11  Writ of Habeas Corpus.) The court held that Hammons "failed to make a prima facie showing of

12  specific facts which would entitle him to habeas corpus relief under existing law." (*Id.* at 3

13  [citation omitted].)

14      12.    Respondent admits that Hammons filed a petition in the California Court of Appeal

15  generally alleging the same claims that he alleges here. (Ex. 7, Pet. for Writ of Habeas Corpus.)

16  Respondent further admits that the California Court of Appeal denied Hammons's petition for

17  writ of habeas corpus on November 7, 2006. (Ex. 8, California Court of Appeal Denial.) The

18  court held that "some evidence supports the decision" of the Board. (*Id.* at 2.)

19      13.    Respondent admits that Hammons filed a petition for review in the California Supreme

20  Court generally alleging the same claims that he alleges here. (Ex. 9, Pet. for Writ of Habeas

21  Corpus.) Respondent further admits that the California Supreme Court summarily denied

22  Hammons's petition on February 14, 2007. (Ex. 10, California Supreme Court Denial.)

23  Respondent also admits that Hammons thus exhausted his state court remedies in regard to the

24  claims alleged here stemming from his 2005 hearing. However, Respondent denies that

25  Hammons exhausted his claims to the extent that they are more broadly interpreted to encompass

26

27      1.    To avoid a voluminous and repetitive filing, Respondent does not include the original
    exhibits to any of the state court habeas petitions filed as exhibits to this Answer. Respondent will
28  gladly provide this Court with its copies of those exhibits upon request.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                              *Hammons v. Curry*
                                                                                  Case No. C07-5098 SBA

1   any systematic issues beyond this particular review of parole denial.

2      14.   Respondent denies that Hammons presents a federal claim for review when he

3   contends that the superior court failed to address his contention that he is not a current threat.

4   Respondent further denies that Hammons presents a federal claim for review when he contends

5   that the Board's decision contains meaningless generalities and fails to address Hammons's

6   character.  Respondent also denies that the Board's decision contains meaningless generalities or

7   that the Board is required to address Hammons's character.

8      15.   Respondent denies that the superior court decision is the last-reasoned decision

9   denying Hammons's state habeas petition.  Respondent affirmatively alleges that Hammons

10  applies the look-through doctrine incorrectly.  Respondent further affirmatively alleges that the

11  last-reasoned decision denying Hammons's state habeas petition is the reasoned decision of the

12  court of appeal.

13     16.   Respondent denies that Hammons presents a federal claim for review when he

14  contends that the Board has demonstrated systematic bias in its decision making by denying

15  parole to more than ninety percent of appearing inmates.  Respondent denies that this bias exists.

16  Respondent affirmatively alleges that the outcome of other inmates' parole hearings is irrelevant

17  to Hammons's past or future hearings.  Respondent affirmatively alleges that Hammons fails to

18  meet his burden of proof as to this claim.

19     17.   Respondent affirmatively alleges that the United States Supreme Court holdings in

20  *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000), and *Blakely v. Washington*, 542 U.S. 296,

21  303-04 (2004) do not apply here because Hammons is not serving a sentence beyond the

22  prescribed statutory maximum for second-degree murder.  *See* Cal. Penal Code § 190(a) (West

23  1995).  Respondent further affirmatively alleges that Hammons fails to meet his burden of proof

24  as to this claim.

25     18.   Respondent denies that Hammons presents a federal claim for review when he

26  contends that the Board's 2005 two-year denial violated the legislative intent of a California

27  Penal Code section and his due process rights because the Board cited the same reasons as it used

28  in the initial denial or rely on different reasons.  Respondent further denies that the Board's

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hammons v. Curry*
                                                                            Case No. C07-5098 SBA

1  statement of reasons for a multi-year denial must be a separate and distinct statement from the

2  Board's initial denial. Respondent affirmatively alleges that Hammons fails to meet his burden

3  of proof as to these claims.

4      19.  Respondent denies that the Board's decision was arbitrary, capricious, lacked a factual

5  basis, or is contrary to the law. Respondent further denies that the Board relied on a no-parole

6  policy and that the Board acted contrary to the intent or spirit of the California Penal Code.

7  Respondent also denies that the Board based its decision on unsupported allegations, that the

8  Board refused to adhere to controlling authorities, or that the Board's "hearings have become a

9  sham." (Amendment/Supplement to Pet. for Writ of Habeas Corpus at 17.)  Respondent

10  affirmatively alleges that Hammons fails to meet his burden of proof as to these claims.

11      20.  Respondent preserves the argument that Hammons does not have a federally protected

12  liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1,

13  12 (1979) (liberty interest in conditional parole release date created by unique structure and

14  language of state parole statute); *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's

15  parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates

16  parole before a suitability finding); and *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal

17  liberty interest in parole because serving a contemplated sentence does not create an atypical or

18  significant hardship compared with ordinary prison life). *Contra Sass v. Cal. Bd. of Prison*

19  *Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally

20  protected liberty interest in a parole date).

21      21.  Respondent denies that the state courts' denials of habeas corpus relief were contrary

22  to, or involved an unreasonable application of, clearly established United States Supreme Court

23  law, or that the denials were based on an unreasonable interpretation of facts in light of the

24  evidence presented. Hammons therefore fails to make a case for relief under AEDPA.

25      22.  Respondent affirmatively alleges that Hammons had an opportunity to present his case

26  to the Board, and that the Board provided him with a detailed explanation for its parole denial.

27  Thus, Hammons received all process due under *Greenholtz*, the only clearly established federal

28  law regarding inmates' due process rights at parole consideration hearings.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hammons v. Curry*
                                                                              Case No. C07-5098 SBA

23.   Respondent affirmatively alleges that the Board considered all relevant and reliable evidence before it, and that some evidence supports its decision.  However, Respondent further affirmatively alleges that the some-evidence test does not apply in federal habeas proceedings challenging parole denials, and that the some-evidence standard is only clearly established federal law in the prison disciplinary context.

24.   Respondent denies that the Board's findings are not supported by some evidence, and further denies that the Board's findings violate Hammons's due process rights for this reason.

25.   Respondent affirmatively alleges that the Board properly considered the gravity of Hammons's commitment offense as required under California Penal Code section 3041(b).  Respondent denies that the Board relied solely on Hammons's commitment offense in denying parole.

26.   Respondent denies that the Board's continued reliance on the unchanging factor of Hammons's commitment offense violated his due process rights.  Respondent affirmatively alleges that the argument that the Board may not continue to rely on the circumstances of his commitment offense to deny parole is without legal support because it relies on dictum in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003).  Furthermore, the California Supreme Court held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the commitment offense.  Thus, as occurred here, the Board may rely on the commitment offense as one of many factors cited in denying parole.

27.   Respondent denies that Hammons has served beyond the applicable state law sentencing matrix, or is otherwise past a uniform term or owed release date.  Under *Dannenberg*, 34 Cal. 4th at 1098, the Board properly found Hammons unsuitable for parole without relying on regulatory matrices for murder because some evidence resulted in his still being an unreasonable risk to public safety.  The Board need not consider its regulatory sentencing matrices until Hammons is found suitable for parole.  *Id.*  Respondent further denies that the Board made findings that took Hammons's crime beyond the matrix.  Respondent also denies that Hammons has served a term beyond that contemplated by his sentence, which carries a maximum term of life imprisonment.

28.   Respondent admits that Hammons's claims are timely under 28 U.S.C. § 2244(d)(1) (2000), and are not barred by any other procedural defense.

29.   Respondent affirmatively alleges that it is improper for any court to order Hammons's immediate release from prison.  Respondent denies that Hammons is entitled to immediate release from prison.  Respondent further denies that Hammons is entitled to discharge free and clear of parole.

30.   Respondent affirmatively alleges that it is improper for any court to instruct the Board to find Hammons – or any inmate – suitable for parole and set a release date if no new information is presented.  Respondent denies that Hammons is entitled to a new hearing. Respondent further denies that Hammons would be entitled to a suitability finding and the setting of a release date if he had a new hearing.

31.   Respondent denies that an evidentiary hearing is necessary in this matter.

32.   Respondent denies that Hammons is entitled to the opportunity to develop or offer additional evidence.

33.   Respondent affirmatively alleges that Hammons fails to state or establish any grounds for habeas corpus relief.

34.   Except as expressly admitted above, Respondent denies, generally and specifically, every allegation in the petition, and specifically denies that Hammons's administrative, statutory or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that this Court deny the petition for writ of habeas corpus, and dismiss these proceedings.

///

///

///

///

///

///

///

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hammons v. Curry*
                                                                              Case No. C07-5098 SBA

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

**THE STATE COURTS' DENIALS OF HAMMONS'S HABEAS
PETITIONS WERE NEITHER CONTRARY TO OR AN
UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED
FEDERAL LAW, NOR BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS.**

Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits only if the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

The state court decisions denying Hammons's claim for habeas relief were neither contrary to or an unreasonable application of federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. First, Hammons received all process required under *Greenholtz*, the only clearly established federal law specifically addressing the due process rights of inmates in a parole suitability decision. Second, the state court decisions did not involve an unreasonable interpretation of the evidence; rather, some evidence supports the Board's decision. Thus, Hammons fails to establish a violation of AEDPA standards, and the state court decisions denying habeas relief must stand.

**A.    The State Court Decisions Were Not Contrary to Clearly Established
Federal Law.**

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole system. The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and an explanation for a parole denial. *Greenholtz*, 442 U.S. at 16. Hammons's claim fails because he received both of these protections at his 2005 hearing.

At his hearing, Hammons had an opportunity to present his case to the Board and he later received an explanation as to why the Board denied parole. (*Id.* at 10-16, 16-20, 20-23, 23-27,

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*Hammons v. Curry*
Case No. C07-5098 SBA

9

1    53, 55-61.) Hammons does not contend otherwise in his petition. Thus, the state courts properly

2    upheld the Board's decision – and the petition should be denied – because Hammons received all

3    process due under *Greenholtz*.

4       Moreover, the some-evidence standard does not apply in federal habeas proceedings

5    challenging parole denials. The United States Supreme Court recently reiterated that for AEDPA

6    purposes, "clearly established federal law" refers only to the holdings of the nation's highest

7    court on the specific issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006).

8    In *Musladin*, a convicted murderer filed a federal habeas petition after a state appeals court

9    upheld the victim's family members' wearing of buttons with the victim's photograph on them

10    during the trial as not inherently or actually prejudicial under two United State Supreme Court

11    cases. *Id.* at 651-52. The Court of Appeals for the Ninth Circuit reversed, noting that the state

12    court's decision was contrary to, or involved an unreasonable application of, clearly established

13    federal law – the prejudice test in the two United State Supreme Court cases. *Id.* at 652. In

14    vacating the Ninth Circuit's decision, the Supreme Court stated that the cases that the Ninth

15    Circuit relied on involved state-sponsored courtroom practices – making a defendant wear prison

16    clothing during trial in one and seating four uniformed troopers behind a defendant on trial in the

17    other – that were unlike the private action of the victim's family members' wearing of buttons.

18    *Id.* at 653-54. The *Musladin* Court further noted that the two cases were not clearly established

19    federal law on the issue at hand because the United States Supreme Court "has never addressed a

20    claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a

21    defendant of a fair trial." *Id.* at 653. Consequently, the Court held that the Ninth Circuit erred by

22    importing a federal test for prejudicial state action in a courtroom to private spectators'

23    courtroom conduct. *Id.* at 654.

24       Recently, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United

25    States Supreme Court again factually distinguished two of its cases that the Ninth Circuit cited in

26    holding that the state court unreasonably applied clearly established federal law when finding

27    ineffective assistance of counsel claims frivolous. In *Landrigan*, a criminal defendant questioned

28    by the judge told the court that he did not want mitigating evidence presented (his attorney

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          *Hammons v. Curry*
Case No. C07-5098 SBA

1   advised otherwise). *Id.* at 1937-38. The United States Supreme Court reasoned that the two

2   cases that the Ninth Circuit relied on were not clearly established federal law by distinguishing

3   them factually. *See id.* at 1942. The Court noted that one case involved an attorney's failure to

4   provide mitigating evidence, while the other case concerned a defendant who refused to help

5   develop mitigating evidence. *Id.*

6          Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. For

7   instance, in *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007), the Ninth Circuit affirmed

8   the district court's denial of a petition claiming ineffective assistance of appellate counsel based

9   on an alleged conflict of interest because no Supreme Court case has held that such an

10  irreconcilable conflict violates the Sixth Amendment. Similarly, in *Nguyen v. Garcia*, 477 F.3d

11  716 (9th Cir. 2007), the Ninth Circuit upheld the state appellate court's decision – refusing to

12  apply *Wainwright v. Greenfield*, 474 U.S. 284 (1986) to a competency hearing – as not contrary

13  to clearly established federal law because the Supreme Court has not held that *Wainwright*

14  applies to competency hearings. *Id.* at 718, 727. Finally, in *Locke v. Cattell*, 476 F.3d 46 (9th

15  Cir. 2007), the Ninth Circuit affirmed the denial of a petition based on a proposed violation of

16  *Miranda v. Arizona*, 384 U.S. 436 (1966) because the state court's decision denying relief was

17  not unreasonable under AEDPA. *Cattell*, 476 F.3d at 53. The court reasoned that no Supreme

18  Court case supported petitioner's contention that his admission to a crime transformed a police

19  interview into a custodial interrogation. *Id.*

20         Similarly, given that *Hill* applied the some-evidence standard to a prison disciplinary

21  hearing and Hammons contests a parole consideration hearing, the some-evidence standard does

22  not apply to this case. Because *Greenholtz* is the *only* United States Supreme Court authority

23  describing the process due at a parole consideration hearing when an inmate has a federal liberty

24  interest in parole, the *Greenholtz* test, not the some-evidence standard, should apply in this

25  proceeding. Regardless, Respondent recognizes that the Ninth Circuit has held otherwise, most

26  recently in *Irons v. Carey*, ___ F.3d ___, No. 05-15275, 2007 WL 2027359 (9th Cir. July 13,

27  2007), and will argue this case accordingly.

28  ///

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hammons v. Curry*
                                                                             Case No. C07-5098 SBA

1   ///

2   **B.      The State Court Decisions Upholding the Board's Parole Denial Were a
            Reasonable Application of Clearly Established Federal Law.**

3

4           Assuming that Hammons has a federally protected liberty interest in parole and that the

5   "minimally stringent" some-evidence standard applies, the requirements of due process are

6   satisfied if there is "any evidence in the record that could support the conclusion reached by the

7   disciplinary board." *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (applying some-

8   evidence standard to prison disciplinary hearing). The some-evidence standard "does not require

9   examination of the entire record, independent assessment of the credibility of witnesses, or

10  weighing of the evidence;" rather, it assures that "the record is not so devoid of evidence that the

11  findings of the . . . board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 455,

12  457. Thus, both the "reasonable determination" standard of AEDPA and the some-evidence

13  standard of *Hill* are very minimal standards.

14          When, as here, the California Supreme Court denies a petition for review without

15  comment, the federal court will look to the last reasoned decision as the basis for the state court's

16  judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned

17  decision is the November 7, 2006 Court of Appeal decision denying Hammons's habeas claim.

18  (Ex. 8.) The court held that some evidence supports the Board's denial. (*Id.* at 2.) Moreover,

19  the court held that the facts of commitment offense are some evidence to support the Board's

20  finding that Hammons was unsuitable for parole. (*Id.*) The court noted, before finding that some

21  evidence supported the Board's denial, that the Board found that Hammons received two RVRs,

22  had not participated in anger management classes, and needed to solidify and document his

23  parole plans. (*Id.*) As these findings were a reasonable application of the *Hill* some-evidence

24  test, Hammons's claim must fail.

25          The holding in *Biggs* does not compel a different result. In *Biggs*, 334 F.3d at 917, the

26  Ninth Circuit stated that the Board's continued reliance on an unchanging factor to deny parole

27  "could result in a due process violation." However, the *Biggs* court did not definitively indicate

28  that reliance on an unchanging factor necessarily violates due process, only that it possibly could.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          *Hammons v. Curry*
                                                                    Case No. C07-5098 SBA

1    The court praised Biggs for being "a model inmate," and found that the record was "replete with

2    the gains Biggs has made," including a master's degree in business administration. *Id.* at 912.

3    Nonetheless, the court denied habeas relief because the Board's decision to deny parole – which

4    relied solely on the commitment offense – was supported by some evidence.

5        Most importantly, the statement in *Biggs* is only circuit court dictum, and not clearly

6    established federal law sufficient to overturn a state court decision under AEDPA. *Crater v.*

7    *Galaza*, 491 F.3d 1119, 1126 (9th Cir. 2007) (holding that AEDPA "renders decisions by lower

8    courts non-dispositive for habeas appeals"). The Ninth Circuit recently emphasized that *Biggs*

9    does not contain mandatory language, and that "[u]nder AEDPA, it is not our function to

10   speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The *Sass*

11   court then rejected the argument that the Board's reliance on "immutable behavioral evidence

12   to deny parole violated federal due process.[2]/ *Id.* Although the Ninth Circuit recently revisited

13   this issue again in *Irons* in dictum, it held there that despite "substantial" evidence of

14   rehabilitation, the Board acted properly within its discretion in continuing to rely on the

15   circumstances of the inmate's commitment offense to deny parole. *Irons v. Carey*, ___ F.3d ___,

16   No. 05-15275, 2007 WL 2027359, *4-5, *6 (9th Cir. July 13, 2007). Thus, *Biggs* does not

17   preclude the Board from using the circumstances of the commitment offense to deny parole, nor

18   may its dictum be used to overturn a valid state court decision.

19       **C.    The State Court Decisions Upholding the Board's Parole Denial Were Based**

20       **on a Reasonable Interpretation of the Facts in Light of the Evidence**
         **Presented.**

21       The second standard under AEDPA is that state court habeas decisions must be based on

22   a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2)

23   (2000). Hammons bears the burden of proof on this prong, and he must show that the state

24

---

25       2. This Court has also recognized that the Board may properly rely on static factors to deny

26   parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary
     factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are

27   genuine. California's parole scheme does not offend due process by allowing the [Board] to predict
     that an inmate presents a present danger based on a crime he committed many years ago." *Hill v.*

28   *Kane*, 2006 WL 3020923 at *3 (Oct. 26, 2006) (N.D. Cal.) (citations omitted).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          *Hammons v. Curry*
                                                                   Case No. C07-5098 SBA

1    courts' factual determinations were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v.*

2    *Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). In his petition Hammons fails to prove that the state

3    courts' upholding of his parole denial was based on objectively unreasonable factual

4    determinations.

5        Here, the state court properly found that some evidence supported the Board's

6    determination that Hammons was unsuitable for parole. (Ex. 8 at 2.) The Board relied on the

7    facts of the crime set forth in Hammons's 2004 Board report (which took the facts from the

8    probation report) and in Hammons's testimony in determining that the commitment offense facts

9    warranted a denial and was committed for a trivial reason. (Ex. 4 at 7-10, 55-56; Ex. 11, Life

10   Prisoner Evaluation Report, October 2004 Calendar, at 1.) The Board also relied on Hammons's

11   central file and testimony in finding that Hammons's prison disciplinary history was recent (and

12   he needed to remain disciplinary free) and that he needed further self-help programming

13   (particularly anger management) and more specific parole plans. (*Id.* at 23, 26-27, 25-26, 20-23.)

14       The state courts' upholding of Hammons's parole denial is both supported by the record

15   and a reasonable interpretation of the evidence presented. As such, the state courts' denials of

16   habeas relief meet the standards of AEDPA, and there are no grounds for this Court to overturn

17   the decisions. The petition for writ of habeas corpus should be denied.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                      *Hammons v. Curry*
Case No. C07-5098 SBA

1

## CONCLUSION

2    To obtain reversal of the Board's parole denial under AEDPA, Hammons must show that

3  the state court decisions denying habeas relief were contrary to, or an unreasonable interpretation

4  of, clearly established Supreme Court law, or that the decisions involved unreasonable factual

5  determinations. Hammons fails to make these showings. Firstly, Hammons received all process

6  due under *Greenholtz*, the only clearly established federal law specifying due process required at

7  parole hearings. Secondly, the state court decisions denying Hammons parole did not apply the

8  some-evidence standard in a manner contrary to or involving an unreasonable application of

9  United States Supreme Court law, nor did they involve unreasonable factual determinations,

10  because some evidence supports the Board's parole. As a result, Respondent respectfully

11  requests that this Court deny Hammons's petition for writ of habeas corpus.

12    Dated: January 11, 2008

13                      Respectfully submitted,

14                      EDMUND G. BROWN JR.
                      Attorney General of the State of California

15                      DANE R. GILLETTE
                      Chief Assistant Attorney General
16
                      JULIE L. GARLAND
17                      Senior Assistant Attorney General

18                      ANYA M. BINSACCA
                      Supervising Deputy Attorney General

19

20

21

22                      STEVEN G. WARNER
                      Deputy Attorney General
23                      Attorneys for Respondent

24

25

26

27    40203986.wpd

28

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*Hammons v. Curry*
Case No. C07-5098 SBA

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Jeffrey Hammons v. Ben Curry, Warden*

No.:   **U. S. D. C., N. D., OAKLAND DIV., C07-5098 SBA**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **January 11, 2008**, I served the attached

**ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES, WITH EXHIBITS 1 - 11**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Jeffrey Hammons, H-23227**
**San Quentin State Prison**
**1 Main Street**
**San Quentin, CA 94964**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **January 11, 2008**, at San Francisco, California.

| J. Baker | | Signature |
|---|---|---|
| Declarant | | |

40205290.wpd